### UNITED STATES NATIONAL LIFE & CASUALTY CO. v. HEARD.

No. 19866. Opinion Filed April 28, 1931.

Roscoe E. Harper and Gentry Lee, for plaintiff in error.

H. B. Clay and Davidson & Williams, for defendant in error.

HEFNER, J. Laura Heard, the defendant in error, as plaintiff, brought this action against the United States National Life & Casualty Company, to recover on an insurance policy. The policy was issued to Edith Robison on the 21st day of December, 1925. She died June 1, 1927. The plaintiff is the beneficiary. The policy is what is known as an Industrial Insurance Policy and was issued under the Industrial Insurance Act of 1923. The policy lapsed for nonpayment of the premium January 10, 1927, but was reinstated March 3, 1927. With reference to reinstatement the policy contains this provision:

"Policies that have lapsed may be revived by the company at its option, upon written application of the insured and payment of all premiums in arrears, but become beneficial for the weekly and funeral benefit only as provided in standard provision 3 according to the cause of the disability or death.

"3. If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of a premium by the company or by any of its duly authorized agents shall reinstate the policy, but only to cover accidental injury thereafter sustained and such sickness as may begin more than ten days after the date of such acceptance."

The policy also provides that:

"No benefits will be paid for disability or death resulting wholly or in part, directly or indirectly, from any venereal disease, or for suicide, sane or insane."

The defense of the insurance company was two-fold: (1) That insured's death was caused from a venereal disease; and (2) that insured made false and fraudulent statements as to her health in order to obtain a revival of the policy. The trial was to the court, resulting in a judgment in favor of plaintiff. Defendant appeals.

It appears from the record that it was the theory of plaintiff that the immediate cause of insured's death was pellagra, while defendant contended the cause of death was syphilis. At the trial of the cause the court permitted Dr. Dillon, a physician who waited upon insured during her last illness, to testify that the death of insured in his opinion resulted from pellagra. Defendant objected to this evidence on the ground that the same was privileged under section 589, C. O. S. 1921, and upon the further ground that this privilege could not be waived by the beneficiary under the policy. In our opinion this objection is not well taken, as under the law the beneficiary has the right to waive the privilege granted deceased under the statute, and, by offering the evidence of the doctor who waited upon her during her last illness, did waive the privilege as to him.

In the case of Catherine Johnson v. Fidelity & Casualty Co. of New York (Mich.) 151 N. W. 593, L. R. A. 1916-A, 475, the Supreme Court of Michigan said:

"The beneficiary in an accident insurance policy may waive the privilege with respect to the testimony of the physician who attended insured in his last illness, in an action to recover upon the policy."

In the late case of Sprouse v. Magee, 269 Pac. 993, the Supreme Court of Idaho said:

"The survival of the right of the patient to waive this privilege has become so generally recognized that texts lay it down as the general rule, and cite decisions to the contrary as the exception. 5 Wigmore on Evidence (2nd Ed.) sec. 2391, says: 'Except in two or three jurisdictions, it is usually agreed that the deceased's representative (and probably also the heir) may waive the privilege.' * * * The statutory privilege of physician and patient is inveighed against by Wigmore (section 2380). Many decisions upholding the right of waiver after death of the patient have reached their conclusion partly, if not entirely, upon the ground that such valuable evidence as is generally furnished by such disclosure, in some instances indispensable, could not have been intended to be forever hidden, or that such was a needless or unjustifiable provision or interpretation, or that such a statute, tending to the suppression of the truth, should be strictly limited in its application."

We think, by the weight of authority. the right to waive the privilege as to the evidence of a physician concerning information acquired in attending the patient survives the patient and may be exercised after her death by the beneficiary in the insurance policy of the deceased.

After plaintiff offered the evidence of Dr. Dillon for the purpose of proving the cause of death of insured, defendant sought to offer the evidence of Dr. Wall and Dr. Wakefield for the purpose of proving and establishing that insured's death resulted from a venereal disease. This evidence was excluded by the trial court on the theory that same was privileged under the section of the statute above referred to. It is the contention of the defendant that plaintiff having waived the privilege as to Dr. Dillon, the same operated as a waiver of the privilege as to any and all other physicians who examined insured. The record discloses that these physicians were not consulting physicians and did not examine insured at the same time, but that all examinations were

276

made separately and at different times. In these circumstances the waiver of the privilege as to one of the physicians did not operate as a waiver as to all. In 28 R. C. L., at page 547, the author announces the following rule:

' Clearly an examination of one or two or more physicians who attended the patient at different times does not operate as a waiver of the privilege as to the others, although they attended the patient for the same ailment."

While the decisions are not uniform, we think the correct rule is announced in the case of Lucy D. W. Mays v. New Amsterdam Casualty Company, 46 L. R. A. (N. S.) 1108. There it is said:

"We understand the rule in relation to the admission of evidence of this character, under statutes similar to ours, to be that waiver of the right can only be claimed where the party testifies to the result of a particular examination, in which case the opposing party may call the physician who made the examination to corroborate or deny the statements made by the party; or where two or more physicians in consultation examine into the physical condition of the party, when, if one of the physicians is called by such party to testify to the results of the examination, another physician present and taking part in the examination may be called by the opposing party to testify in relation thereto. But if the physician whose evidence is sought to be introduced by the opposing party made his examination at a different time from that testified to by the physician introduced, and the party has not testified to the results of such examination, the evidence is inadmissible."

In the case of Missouri & N. A. R. Co. v. Daniels (Ark.) 136 S. W. 651, 48 L. R. A. (N. S.) 400, note, it is said:

"An examination of one of two or more physicians who attended the patient at different times does not operate as a waiver of the privilege as to the others, although they attended the patient for the same ailment."

See, also: Baltimore & O. R. Co. v. Morgan, 36 App. D. C. 195; Citizens' Street R. Co. v. Shepherd, 30 Ind. App. 193, 65 N. E. 765; Baxter v. Cedar Rapids, 103 Iowa, 599, 72 N. W. 790; Dotton v. Albion, 57 Mich. 575, 24 N. W. 786; Slater v. Sorge, 166 Mich. 173, 131 N. W. 565; Mellor v. Missouri P. R. Co., 105 Mo. 455, 10 L. R. A. 36, 16 S. W. 849; Milligan v. Clayville Knitting Co., 137 App. Div. 383.

Under the rule announced in the above cases, the trial court committed no error in excluding this offered evidence.

It is next contended by the defendant that the court erred in sustaining the objection of plaintiff to the introduction in evidence of insured's application for reinstatement of the policy. The portion of the application sought to be introduced, so far as material to a decision, is as follows:

"The above-described policy having lapsed, and the undersigned having forfeited all rights thereunder, hereby applies for a revival of insurance; and to induce the said company to revive the same, hereby represents and declares that the life heretofore insured under said policy has not, since it was insured, been sick or afflicted with any disease, or met with any accident. * * *"

It is the contention of the defendant that the statement made by insured in this application as to condition of her health was false and that the application should have been admitted for the purpose of proving this statement. The record does not disclose upon what theory the court excluded this evidence. Counsel for defendant contend that the same was excluded for the reason that the application was not attached to the policy and was therefore inadmissible under section 6728, C. O. S. 1921. This being an industrial insurance policy, the above section does not apply, and the application was not for this reason inadmissible. See section 6737, C. O. S. 1921. We think this application might have been properly admitted, but the admission thereof in and of itself would prove nothing. As before stated, this policy was issued under the Industrial Insurance Act of 1923, chapter 60, Session Laws 1923. Section 15 thereof provides:

"No representation made in obtaining or securing a policy of insurance on the life or lives of any person, or persons, shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable."

The wording of this section in our opinion is merely another way of saying that statements of this character in an application for insurance shall, in the absence of fraud, be deemed representations and not warranties. This being true, if defendant relied upon the falsity of the statement contained in the application as a defense, the burden was upon it to prove the falsity thereof and that the same was made by the insured with the intent to deceive. American Bankers' Ins. Co. v. Hopkins, 67 Okla. 150, 169 Pac. 489; Owen v. U. S. Surety Co., 38 Okla. 123, 131 Pac. 1091; Continental Casualty Co. v. Owen, 38 Okla. 107, 131 Pac. 1084.

The record discloses no offer of proof on

behalf of the defendant to the effect that the statement made by insured as to her health in her application for reinstatement is false and made with intent to deceive. In these circumstances, the exclusion of this application is not sufficient ground upon which to reverse the judgment.

In the proof of death admitted in evidence appears the statement of Dr. Dillon that insured died from pellagra. It is contended by defendant that this statement in the proof of death was erroneously admitted in evidence, and in support thereof is cited the case of Oklahoma Aid Ass'n v. Thomas, 125 Okla. 190, 256 Pac. 719. We deem it unnecessary to pass upon this question, inasmuch as Dr. Dillon subsequent to the objection was placed upon the witness stand and fully testified relative to the matter and testified that in his opinion the cause of insured's death was pellagra.

It is further contended that the evidence was insufficient to support the judgment. There was some evidence introduced tending to establish that syphilis was the immediate cause of insured's death. There was also evidence to the effect that the cause of her death was pellagra. This conflict in the evidence was by the trial court resolved in favor of the plaintiff. There is ample evidence to sustain this finding, and there appearing no reversible error in the record, the judgment is affirmed.

LESTER, C. J., CLARK, V. C. J., and RILEY, CULLISON, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur.