## Cataldi v. Cataldi

Before Soffel, Smart and Weiss, JJ.

*Dane Critchfield*, for plaintiff.

*Ruggero J. Aldisert*, for defendant.

SOFFEL, J., October 30, 1959.—This case is before the court on a rule to show cause why defendant should

not be required to submit to a physical examination by plaintiff's doctor. Defendant and plaintiff are husband and wife. The wife plaintiff has brought suit in divorce against her husband alleging as grounds for said divorce that defendant is impotent.

Plaintiff and defendant were married November 15, 1945. They separated April 12, 1958. Plaintiff alleges that her husband was impotent at the time of the marriage and that this impotency still exists. She asserts that she cannot properly prepare her case in divorce unless defendant submits to an examination by a physician of her choice. Defendant has refused to do this. Plaintiff asks the court to grant an order compelling defendant to submit to this examination.

This case presents an issue which apparently has never been judicially determined by the appellate courts of this Commonwealth. Involved are two questions:

First: Does the court have the authority to compel a husband defendant, against his will, to submit to a physical examination in a divorce action instituted by the wife, which alleges as ground for divorce the impotency of the husband?

Second: If it is decided that the court does have such authority, should it be exercised?

Pa. R. C. P. 4010 states:

"The court, on the motion of a party, may order a party to submit to a physical or mental examination by a physician when his physical or mental condition is in controversy in the action."

Counsel for plaintiff argues that this rule governs the instant case. He points out that under Pa. R. C. P. 1121(a) an "action" is defined as including an action of divorce. Pa. R. C. P. 4001(a) provides that the Rules of Civil Procedure apply to "any civil action or proceeding at law or in equity." It is therefore argued

that granting the right to examine a party applies to a divorce action.

It is contended that there is no reason why the application of the rule providing for the right to examine a party should be limited since the policy of the rules is to make discovery procedures more liberal and uniform.

In support of the right to have defendant submit to a physical examination in a case like this, counsel for plaintiff relies on the case of Le Barren v. Le Barren, 35 Vt. 365, 368 (1862). In speaking of the right to obtain a physical examination where impotency was the grounds for an annulment, the court said:

"The uniform and settled practice in the ecclesiastical courts in England, in this class of cases, is to require a medical examination, and to compel the party to submit to it, if he will not do so voluntarily."

The Vermont court, in recognizing that the right to have a defendant submit to a physical examination was an incidental power of the court necessary to prove impotency, said in this case, at page 369:

"Impotency, by our statute, is made a ground for annulling a marriage. Ordinarily, this is a matter which cannot be proved by witnesses. The very nature of the fact precludes it, and if the court have no power to compel an examination, for the purpose of ascertaining the fact, it would in most cases amount to an absolute denial of justice, and that part of the statute making this a cause for nullifying a marriage would be a dead letter."

In 1890, the United States Supreme Court in denying the right to have a plaintiff submit to a physical examination in a trespass case, stated by way of dicta:

"The authority of courts of divorce, in determining a question of impotence as affecting the validity of marriage, to order an inspection by surgeons of the person of either party, rests upon the interest which

the public, as well as the parties, have in the question of upholding or dissolving the marriage state, and upon the necessity of such evidence to enable the court to exercise its jurisdiction. . .": Union Pacific Railway Company v. Botsford, 141 U. S. 250, 252 (1890).

In Spannuth v. Spannuth, 25 D. & C. 216 (1935), where libellant presented his petition asking the court to order a physical examination to determine the fact of impotency, the court said, at page 221:

"The burden of proving the fact is on him [the libellant], and as has already been indicated . . . there may be no satisfactory proof of the fact except a physical examination. It certainly would amount to a denial of justice if a libellant under such circumstances could not obtain the proof."

However, the court denied the examination because of the age of respondent, even though the court stated that in proper cases the court did have the power to exact a physical examination from defendant.

Defendant argues the court has no authority in the instant case to order the examination of defendant by a physician.

This argument is predicated upon the fact that the instant proceedings are in divorce and that rule 4010 must be interpreted in conjunction with logic, reason, standards of justice, and must be considered with other rules of civil procedure, statutes and judicial decisions.

Counsel for defendant cites Pa. R. C. P. 4011 which provides:

"No discovery or inspection shall be permitted which . . .

"c. relates to matter which is privileged . . .", and also the Act of June 7, 1907, P. L. 462, sec. 1, 28 PS §328, which provides:

"No person authorized to practice physics or surgery shall be allowed, in any civil case, to disclose any

information which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity, which shall tend to blacken the character of the patient, without consent of said patient, except in civil cases, brought by such patient, for damages on account of personal injuries."

Defendant relies on the only reported Allegheny County case relating to this subject, to wit, Dyer v. Dyer, 78 Pitts. L. J. 348. Here the court prohibited the testimony of examining physicians of defendant in a divorce action based on impotency.

Citing the Act of 1907, the court said, on page 349:

"The evidence of these examining physicians is precluded by this Act. Their evidence would tend to blacken the character of the patient because it would tend to show that at the time of marriage she knew that she was impotent, that she did not disclose the fact of her impotency and that by not disclosing such fact to her proposed husband, she deliberately deceived him."

In Standard Pennsylvania Practice, the law is thus enunciated:

"By the great weight of authority in this country, a court having jurisdiction to grant a divorce on the ground of impotency has power, also, to direct a proper medical and surgical examination of the persons of the parties whenever necessary. In this Commonwealth, if impotency on the part of the wife is alleged, the court, with her consent, will order a physical examination. Where she does not consent, however, she cannot be compelled by the court, against her will, to submit to such physical examination. Where the power does exist, its exercise rests within the sound discretion of the court and may, therefore, be refused for good cause": 15 Standard Pa. Practice, §65, p. 81.

In the case of Haas v. Haas, 26 Dist. R. 731, which arose in Philadelphia County, the court discharged a

rule to show cause why a female defendant should not submit to a physical examination in a divorce action where impotency was alleged, and declared:

"Whatever the rule may be in England and in other jurisdictions, we find no authority in Pennsylvania in which a physical examination of a respondent has been required in such a proceeding against her protest. . . . Examinations of plaintiffs in this jurisdiction have been ordered where personal injuries have been alleged, and the orders have been based upon the theory that the case should not be permitted to proceed until the plaintiff submits to the examination: Demenstein v. Richardson, 2 Dist. R. 825.

"An entirely different situation is presented when one is unwillingly a party. The only manner in which an order of court could be enforced would be by commitment for contempt, and to this extreme we apprehend the courts would be very loathe to go. . . ."

It is our conclusion that this court does not have jurisdiction to order the physical examination of defendant against his will. Even if the court possessed the necessary power to order such an examination, its exercise would rest within the sound discretion of the court and should not be exercised in this case.

The basic issue is not defendant's physical condition in 1959, but in 1945, when the marriage occurred. The gravamen of plaintiff's complaint is that defendant husband was impotent in 1945 when they took their marital vows. Can it be seriously argued that in 1959, 14 years later, plaintiff requires a physical examination in order to prepare her case?

The second factor militating against the exercise of this court's discretion would be the inability of the examining physician to make disclosures of his examination under the Act of 1907. See Dyer v. Dyer, supra.

The rule to show cause why defendant should not be required to submit to a physical examination by plaintiff's doctor is therefore refused.

" 'It shall be understood that there are some rights which belong to man as man and woman as woman, which, in civilized communities, they can never forfeit on becoming parties to divorce suits or any other suits, and that there are limits to the indignities to which parties in legal proceedings may be lawfully subjected' ": Haas v. Haas, supra, quoting Judge Cooley in Page v. Page, 51 Mich. 88.

*Order*

And now, to wit, October 30, 1959, the rule to show cause why defendant should not be required to submit to a physical examination is dismissed.